## No. 23-20131

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

CRAIG PRICE, II,
*Plaintiff-Appellant,*

v.

VALVOLINE, LLC,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of Texas
Case No. 4:21-cv-03683

---

## BRIEF OF APPELLANT CRAIG PRICE, II

---

Melissa B. Carr
State Bar No. 24065008
S.D. Tex. Federal ID No. 3667785
DuBois, Bryant & Campbell, LLP
303 Colorado Street, Suite 2300
Austin, Texas 78701
Phone: (512) 457-8000
Fax: (512) 457-8008
Email: mcarr@dbcllp.com
***Counsel for Plaintiff-Appellant***
***Craig Price, II***

---

## ORAL ARGUMENT REQUESTED

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

(1)    **Plaintiff-Appellant:**

Craig Price, II

(2)    **Counsel for Plaintiff-Appellant:**

Melissa B. Carr
DuBois, Bryant & Campbell, LLP
303 Colorado St., Suite 2300
Austin, TX  78701

(3)    **Co-Counsel for Plaintiff-Appellant (U.S. District Court):**

Lewis A. Zipkin
Kevin M. Gross
Zipkin Whiting Co., L.P.A.
3637 South Green Rd.
Beachwood, OH  44122

(4)    **Defendant-Appellee:**

Valvoline, LLC

(5)     **Counsel for Defendant-Appellee:**

Jeremy W. Hawpe
Littler Mendelson, P.C.
2001 Ross Ave., Suite 1500, LB 116
Dallas, TX  75201

*/s/ Melissa B. Carr*
Melissa B. Carr

**Attorney of Record for**
**Plaintiff-Appellant Craig Price, II**

## STATEMENT REGARDING ORAL ARGUMENT

Under Fed. R. App. P. 34(a)(1) and 5th Cir. R. 28.3.2, Plaintiff-Appellant Craig Price, II requests oral argument on this matter. The district court made three errors in granting summary judgment to Valvoline, LLC: first, by failing to apply the four factors used to distinguish between "stray remarks" and direct evidence of a discriminatory animus and failing to consider all statements in evidence, including the use of the word "n----" by Price's supervisor, as direct evidence of discrimination; second, by failing to consider the totality of the circumstances when analyzing Price's hostile work environment claim; and third, by finding that the use of historically discriminatory language by Price's supervisors was not sufficiently severe to create a hostile work environment.

Oral argument will assist the Court in deciding whether the controlling law, when applied to these facts, results in Price stating valid claims under Title VII. The record contains sufficient direct and circumstantial evidence of race-based discrimination to support trying Price's claims to a jury.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT .................................iii

TABLE OF CONTENTS ..........................................................................iv

TABLE OF AUTHORITIES...................................................................vi

I.     JURISDICTIONAL STATEMENT .................................................. 1

II.    STATEMENT OF THE ISSUES...................................................... 1

III.   STATEMENT OF THE CASE ......................................................... 2

IV.    SUMMARY OF THE ARGUMENT ............................................... 10

V.     ARGUMENT .................................................................................. 11

       A.     Standard of Review ............................................................ 11

       B.     The district court erred by failing to consider all Price's
              evidence and apply the four factors used to determine
              direct evidence of discrimination ......................................... 12

       C.     The district court erred by not considering the totality
              of the circumstances, both facially neutral and overtly
              discriminatory, as comprising a hostile work environment. 19

       1.     The district court did not consider Valvoline's use of the
              attendance policy as facially neutral adverse acts
              contributing to a hostile work environment........................... 22

       2.     The district court improperly considered overtly hostile
              actions by Price's supervisors as isolated incidents, rather
              than in the context of a hostile work environment .............. 25

D.    The district court erred by finding that two instances of Price's supervisors using historically discriminatory language was not severe enough to create a hostile work environment ........................................................... 25

VI.   CONCLUSION ................................................................. 26

CERTIFICATE OF SERVICE ................................................. 27

CERTIFICATE OF COMPLIANCE ........................................ 28

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .......................................................................... 12

*Ayissi-Etoh v. Fannie Mae*,
  712 F.3d 572 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ........... 16

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
  394 F.3d 285 (5th Cir. 2004) ........................................................... 16

*EEOC v. Ryan's Pointe,*
  *No. 19-20656, 2022 WL 4494148, at \*3-5*
  *(5th Cir. Sept. 27, 2022)*........................................................ passim

*EEOC v. WC&M Enters.*,
  496 F.3d 393 (5th Cir. 2007) ................................................ 22, 23, 26

*Frank v. Xerox Corp.*,
  347 F.3d 130 (5th Cir. 2003) ........................................................... 20

*Harris* v. *Forklift Sys., Inc.*,
  510 U.S. 17 (1993) ............................................................................ 19

*Harvill v. Westward Commc'ns*,
  433 F.3d 428 (5th Cir. 2005) ........................................................... 20

*Hernandez* v. *Yellow Transp., Inc.*,
  670 F.3d 644 (5th Cir. 2012) ........................................................... 19

*Johnson v. PRIDE Indus., Inc.*,
  7 F.4th 392 (5th Cir. 2021).........................................................23, 24

*Jones v. Robinson Prop. Grp. L.P.*,
  427 F.3d 987 (5th Cir. 2005) ........................................................... 16

*Kemp v. Holder*,
  610 F.3d 231 (5th Cir. 2010) ........................................................... 11

*Kendall v. Block,*
    821 F.2d 1142 (5th Cir. 1987) ........................................................ 16

*Lauderdale* v. *Texas Dep't of Crim. Just., Inst. Div.,*
    512 F.3d 157 (5th Cir. 2007) .......................................................... 19

*Meritor Sav. Bank, FSB v. Vinson,*
    477 U.S. 57 (1986) ........................................................................ 20

*Oncale* v. *Sundowner Offshore Servs.,*
    523 U.S. 75 (1998) ........................................................................ 20

*Ramsey* v. *Henderson,*
    286 F.3d 264 (5th Cir. 2002) .......................................................... 19

*Rodriguez v. Eli Lilly & Co.,*
    820 F.3d 759 (5th Cir. 2010) .......................................................... 12

*Romero v. City of Grapevine,*
    888 F.3d 170 (5th Cir. 2018) .......................................................... 11

*Sandstad v. CB Richard Ellis, Inc.,*
    309 F.3d 893 (5th Cir. 2002) .......................................................... 12

*Spriggs v. Diamond Auto Glass,*
    242 F.3d 179 (4th Cir. 2001) .......................................................... 15

*Vance v. Union Planters Corp.,*
    209 F.3d 438 (5th Cir. 2000) .......................................................... 12

*Walker v. Thompson*, 214 F.3d 615 (5th Cir. 2000),
    *abrogated on other grounds by Burlington N. & Santa Fe Ry. v.*
    *White*, 548 U.S. 53 (2006) ............................................................. 21

*Watson v. CEVA Logistics U.S., Inc.,*
    619 F.3d 936 (8th Cir. 2010) .......................................................... 23

*Young v. City of Houston, Tex.,*
    906 F.2d 177 (5th Cir. 1990) .......................................................... 16

# STATUTES

28 U.S.C. § 1291 ..........................................................................1

28 U.S.C. § 1331 ..........................................................................1

28 U.S.C. § 1343 ..........................................................................1

42 U.S.C. § 2000e ........................................................................1

# I.    JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff-Appellant Craig Price, II brought his lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. This Court has jurisdiction under 28 U.S.C. § 1291 because the district court's March 3, 2023 order granting summary judgment is a final order. (ROA.411-24.) Price timely filed a notice of appeal on March 31, 2023. (ROA.448-49.)

# II.    STATEMENT OF THE ISSUES

**Issue One:** To show direct evidence of discrimination, a Title VII plaintiff must present evidence of clear discriminatory motive on its face, without the need for inference. The district court did not apply the four factors used to distinguish direct evidence from "stray remarks" and did not consider all Price's evidence, such as evidence that Harris, Price's supervisor, used the word "n----" when speaking to and about African Americans close in time to Price's termination. Did the district court err by determining Price could not prove direct evidence of discrimination?

**Issue Two:** Courts analyze Title VII hostile work environment claims under the totality of the circumstances, requiring the court to

consider all adverse employment actions in context, whether facially neutral or overtly discriminatory, when assessing the existence of a hostile work environment. Did the district court err by not considering the evidence Price presented of facially neutral adverse employment actions occurring close in time to overtly discriminatory adverse actions, and by instead viewing the overtly discriminatory conduct as isolated incidents?

**Issue Three:** A Title VII plaintiff can show the existence of a hostile work environment by presenting evidence of a single instance of sufficiently severe harassment. Price presented evidence that Motz and Langston, his supervisors, each used language which the district court agreed has historically been used to demean African American men. Did the district court err by determining that the use of historically discriminatory language by Price's supervisors was not severe enough to create a hostile work environment?

## III.  STATEMENT OF THE CASE

When Valvoline moved for summary judgment on Price's Title VII claims, it did so by relying on only two items of testimonial evidence: (1) Price's deposition testimony (ROA.108-34.), and (2) a declaration from

Frank Harris, the plant manager and supervisor who terminated Price's employment on Valvoline's behalf. (ROA.136-41.) The remainder of Valvoline's evidence consisted of its attendance policy, a handful of disciplinary actions against Price for tardiness, and the final notice of termination signed by both Price and Harris. (ROA.142-58.) In short, Valvoline construed its version of events into one where Price was terminated for violating the attendance policy—no harassment, no discrimination, just a cold and plain application of policy. (ROA.84-86.)

Price, on the other hand, opposed summary judgment by presenting a far more detailed and holistic view of what life was like inside of Valvoline's facility in La Porte, Texas, relying heavily on testimonial evidence to make his case. (ROA.181-275.) Apart from presenting his own deposition as evidence (ROA.181-207.), Price offered the deposition testimony of Harris (ROA.208-37.), along with that of Dalan Motz, the Assistant Plant Manager and another of Price's supervisors, who also engaged in discriminatory conduct. (ROA.238-69; *see also* ROA.164-66.) Price also introduced two declarations, one which he authored (ROA.270-71.), and one from Jeffrey Brown, the only African American supervisor at the La Porte facility and a first-hand witness to Harris's use of the

word "n-----." (ROA.272-75.) Collectively, this testimony presents a complete picture of the racial animus and racially hostile work environment Price was subjected to while employed with Valvoline.

The district court, in summarizing the facts, covered this controversy using broad strokes, indicating generally (1) when Price was hired, (2) who all of Price's supervisors were, (3) the changes Valvoline made to its attendance policy in 2020, and (4) how Price was reprimanded under this revamped attendance policy, up to and including his termination in October 2020. (ROA.411-13.) While this summary from the district court provides relevant background information, it leaves out much of the evidence which is presently at issue. More importantly, this summation of the facts omits the most harmful and blatant instances of Valvoline's discriminatory conduct.

There is no real dispute between Price and Valvoline as to the facts at issue in this lawsuit. As the district court noted, the issue on summary judgment was whether the facts Price presented, when viewed most favorably to Plaintiff and through the lens of the relevant, controlling law, substantiate claims which could and should be tried to a jury. (*See, e.g.,* ROA.420., noting that "[a]ccording to Defendant, Plaintiff's

allegations are 'petty slights, minor annoyances, and simple lack of good manners' that are not severe or pervasive enough for an actionable hostile work environment claim.")

Accordingly, the following excerpts from the record are facts in evidence which the district court failed to address or consider, which the district court was *required* to consider, and which necessitate a reversal of the district court's grant of summary judgment to Valvoline.

Price's employment at Valvoline was strained because of race-related remarks directed to him in the workplace. Price testified, "[I was] working in a hostile environment being an African American male." (ROA.192.) Price testified that Jamie Langston, Frank Harris, and Dalan Motz all subjected him to "different treatment from other races and other employees that [he] worked with[,]" and that all three of these Caucasian men repeatedly expressed "[d]isrespect and hostility and racism" in the workplace. (ROA. 192.)

Jamie Langston, then-Assistant Plant Manager and Price's supervisor, yelled at Price that he was a "lazy boy." (ROA.189, 192-93.) Langston, a Caucasian, called Price "a lazy boy" because "the shift had just started and [Price] was trying to get a forklift to work and [Price]

5

wasn't able to[,] and [Langston] started raising his voice, saying—it escalated and, you know, went from there and [Langston] called me a lazy boy." (ROA.193.) Price "really was shocked that [Langston] said that out loud[,]" and Price "shook [his] head and [] walked off" to avoid further harassment. (ROA.193.) Later that same day, Eric Hawkins, Lead Material Handler, told Price that "what Jamie Langston says goes and that this isn't a democracy, this is a dictatorship." (ROA.193.)

Dalan Motz, another of Price's supervisors who replaced Langston as Assistant Plant Manager under Frank Harris (ROA.246, 253-54.), made a discriminatory remark to Price as well: "[Price] was supposed to receive some T-shirts as an incentive bonus[,] and [Price] stopped Mr. Motz one day to ask him about the shirts and [Motz's] reply was, *you people always want something for free*, and that hurt, you know. He said, you know, what he said, and I didn't particularly feel comfortable with that comment." (emphasis added) (ROA.193.) Like the incident with Langston, Price was so shocked by Motz's statement that he "just looked at him and was surprised that he said it out loud." (ROA.193.) Indeed, "When Mr. Motz replied by saying, 'You people always want something for free,' [Price] knew exactly what Mr. Motz meant, that '*Black* people

always want something for free.'" (ROA.270.) Price called Valvoline's HR hotline to report instances of discrimination, but nothing ever came of his complaints. (ROA.271.)

Price also testified that Motz, as the Assistant Plant Manager, would not "be fair all around to everybody," only treating "certain individuals" with respect—and Price was not one of those "certain individuals." (ROA.196.) Price "was working in a hostile work environment," which Motz had "a lot to do with" fostering, particularly when Motz was "dealing with [Price]." (ROA.196.) This often took the form of "[n]itpicking" Price and his work, doing so through "[c]ertain comments, certain things that he would say to other people, just certain ways that he would treat me[,]" all of which Price believes was racially motivated. (ROA.196, 202.)

On the publicly available Facebook page bearing his full name, "Dalan Meredith Motz," along with numerous pictures of his face, Motz has made or endorsed numerous race-related, misogynist, or derogatory remarks through posts he has intentionally shared on his publicly available Facebook page. The following posts were made while Motz was employed as a supervisor and working at Valvoline La Porte:

7



When Harris was asked whether he "ever made comments that [he] feels that there should be greater diversity within the workplace at Valvoline La Porte[,]" Harris testified that he wants the warehouse to be "as diverse as the community is, as we are in Houston." (ROA.234.) Harris recognized that the overwhelming majority of employees at Valvoline La Porte were African American. (ROA.235.) Harris also testified that he has input on who is hired and who is fired. (ROA.221, 223.) Further, in paragraph six of his declaration, Brown made the following statement: "*With a big smile on his face*, Mr. Harris told me that some of the workers on the floor were calling each other "bitch-ass n-----," "Uncle Tom n-----," and "punk-ass n-----. * * * *By the smirk on his*

*face, it was apparent that Mr. Harris took great joy in saying those words to my face*[.]" (emphasis added) (ROA.273.) The district court failed to consider that Harris did not deny using the word "n----" three times while speaking with Brown, and that Harris "took great joy in using those words." (ROA.273.)

On the morning of October 26, 2020, Harris intentionally failed to tell Price that he was going to assess him a point during their conversation, the point that Harris would later use to justify Price's termination. Harris also failed to inform Price that he had access to both "72 hours of unused sick time" and "80 sick partial hours" as of October 31, 2020. (ROA.258.) Instead of allowing Price to use that unused time, Price was terminated on October 29, 2020. (ROA.271.)

Prior to his termination, Price had asked Harris on multiple occasions how many attendance points he had, but each time Harris "would kind of, you know, brush me to the side." (ROA.202.) Price continued: "I remember [Harris] telling me that I was doing okay and that I was doing good and I didn't need to worry about it and him printing out the paperwork would be too much work." (ROA.202.) Motz testified that an employee must ask to "know how many attendance points he

has[,]" and that "there are [no] other way[s] to find out[.]" (ROA.253.) Since his wrongful termination from Valvoline, Price has worked numerous temporary jobs but has had difficulty finding long-term, stable employment like what he had with Valvoline. (ROA.186-87.)

## IV.   SUMMARY OF THE ARGUMENT

This appeal concerns the district court's misapplication of relevant, controlling law on Title VII to the historical record, along with the district court's omission of several key facts from its consideration.

First, the district court committed reversible error by misapplying the four factors used to distinguish between "stray remarks" and direct evidence of a discriminatory animus and failing to consider all evidence—including Harris' use of the word "n----" close in time to Price's termination—as direct evidence of discrimination.

Second, the district court failed to apply the totality of the circumstances test to Price's *prima facie* case of race-based hostile work environment by (1) not considering the numerous instances of facially neutral adverse employment actions against Price contemporaneously with the overtly discriminatory statements from Motz and Langston, and

(2) considering the statements from Motz and Langston in isolation from one another. This is also reversible error.

Finally, the district court erred by disregarding the historical precedence of the use of "lazy boy" and "you people" to disparage African American men. By not considering these statements from Motz and Langston as severe enough to state a valid race-based hostile work environment claim, the district court committed reversible error.

## V.    ARGUMENT

### A.    Standard of Review.

Review of the district court's grant of summary judgment to Valvoline, LLC is *de novo*, applying the same standards as the district court. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

Summary judgment is proper only if "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Romero v. City of Grapevine*, 888 F.3d 170, 175 (5th Cir. 2018) (citation omitted). A material fact is one that would allow the jury to return a verdict for the non-movant. *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on

a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## B. The district court erred by failing to consider all Price's evidence and apply the four factors used to determine direct evidence of discrimination.

Direct evidence "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). Evidence is direct if it is "(1) related to [a protected characteristic]; (2) proximate in time to the [employment action]; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2010); *see also Vance v. Union Planters Corp.*, 209 F.3d 438, 442 (5th Cir. 2000) (same). Summary judgment is not appropriate when a plaintiff provides direct evidence of discrimination. *Rodriguez*, 820 F.3d at 764. This is because direct evidence, if believed, proves the fact of discriminatory animus. *Sandstad*, 309 F.3d at 897.

In *EEOC v. Ryan's Pointe Houston, LLC*, this Court considered whether a Mexican-American employee had presented direct evidence of discrimination. *Ryan's Pointe,* No. 19-20656, 2022 WL 4494148, at *3-5

(5th Cir. Sept. 27, 2022). The facts were strikingly similar to those in the case at bar: the plaintiff, Magali Villalobos, presented evidence that her employer expressed dismay at the fact that the office staff were "all Mexicans," that two of her supervisors expressed a desire to "change the demographic[s]" of the staff, and that her employer told another supervisor to hire "a higher class of individual with the look of Ken and Barbie" which the supervisor understood to mean "petitite, attractive, young[,] and Caucasian." *Id.* at \*4. Applying the four direct evidence factors, this Court held that Villalobos had presented direct evidence of discrimination because, when combined, the statements were related to her Mexican national origin, were proximate in time to her termination, were made by a person with authority over her termination, and related to her termination. *Id.* at \*4.

In the present case, the district court correctly identified these factors, but never applied them to the facts of the case. Instead, the district court focused on only two statements and evaluated each in turn to determine whether it required an inference. (ROA.416.) Finding that each statement did require an inference, the district court then concluded that Price had not presented direct evidence of discrimination.

(ROA.416.) Had the district court applied the factors as this Court had instructed in *Ryan's Pointe*, and had it considered all evidence in a light most favorable to the plaintiff as required, it would have found that Price had presented direct evidence of discrimination. *EEOC v. Ryan's Pointe Houston, LLC*, No. 19-20656, 2022 WL 4494148, at *3-4 (5th Cir. Sept. 27, 2022).

The two statements the district court considered were (1) Harris' statement that their primarily African-American workplace "needed more diversity"; and (2) Harris' statement that he was going to use Valvoline's new attendance policy to "get rid of several people," specifically mentioning Price. (ROA.415-17.) The district court concluded that the "diversity" statement "could have meant that he was interested in hiring more women or people of other nationalities" and that the intent to use the new attendance policy to get rid of Price didn't mention his race, and therefore both required inferences and could not be considered direct evidence. (ROA.416-17.) The district court then incorrectly concluded that "Harris did not explicitly express dismay towards African-Americans or a desire to hire more employees of a particular racial background." (ROA.417.)

Because the district court ignored much of the record, it failed to consider all evidence that Price presented . First, the district court erred by ignoring that Harris' use of the word "n-----":

> In May 2020, Mr. Harris called me into his office to have a word. *With a big smile on his face, Mr. Harris told me that some of the workers on the floor were calling each other "bitch-ass nigger," "Uncle Tom nigger," and "punk-ass nigger."* Mr. Harris does not deny saying this to me. *By the smirk on his face, it was apparent that Mr. Harris took great joy in saying those words to my face, and I believe he wanted me to be very aware of that fact.* I was stunned and highly offended, and I had to tell Mr. Harris that he could "stop saying that word now." Mr. Harris then asked me what should be done about these workers, to which I replied that they should be fired.

(Emphasis added). (ROA.273.) This evidence is irrefutably evidence of racial animus on the part of Harris. The district court should have considered Harris's intentional and gleeful use of the word "n----" when speaking to Brown as evidence of Harris's discriminatory animus towards African Americans. *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) (finding that the word "n----" is "pure anathema to African-Americans"). Harris's use of the word "n----" was direct evidence of his discriminatory animus and contempt for African Americans. "No other word in the English language so powerfully or instantly calls to mind our country's long and brutal struggle to overcome

racism and discrimination against African-Americans." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring).     Harris's use of the word "n----" five months prior to terminating Price's employment in October 2020 further evidences Harris's discriminatory animus towards Price and other African Americans, and is related to Harris's decision to terminate Price's employment. *See Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 993 (5th Cir. 2005) (stating that "a person * * * with decision making authority" displaying racial animus may constitute direct evidence of discrimination); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 290 (5th Cir. 2004); *see also Young v. City of Houston, Tex.*, 906 F.2d 177, 180–81 (5th Cir. 1990) (citing *Kendall v. Block*, 821 F.2d 1142, 1145–46 (5th Cir. 1987)) ("This court has implied that calling an employee a 'nigger' would be direct evidence of race discrimination.").

Moreover, Harris's statement that he wanted "more diversity in the workplace" occurred in July/August of 2020, three months prior to Price's termination and *after* Harris had already used the word "n----" three times while speaking directly to Brown. The district court failed to consider the "diversity" statement in conjunction with Harris' use of the

word "n-----." Likewise, the district court failed to consider that Harris "hired more *non*-African Americans than any other race" while terminating Price's employment to advance his stated goal of having less African Americans in the workplace. (ROA.273.)

The district court also failed to note the evidence that Harris was outspoken about his disdain for African Americans:

> Mr. Harris also made it a point to repeatedly tell [Brown] about how smart his new Caucasian administrator was, so smart, in fact, that he was tasked with tracking attendance. The previous administrator was an African American woman, and Mr. Harris did not allow her to track attendance because he thought she was "too close with the hourly employees."

(ROA.273.) Likewise, the district court did not mention Motz's statement that "you people always want something for free," which Price understood to mean "you Black people." (ROA.270, 411-24.)

Moreover, the district court failed to apply the four "direct evidence" factors to the complete evidence before it on summary judgment. The facts and statements in the present case are strikingly similar to the facts in *Ryan's Pointe*, in which the manager stated a desire to "change the demographics" of the primarily-Mexican workforce and to hire a "higher class of individual with the look of Ken and Barbie." *EEOC v. Ryan's Pointe Houston, LLC*, No. 19-20656, 2022 WL 4494148, at *3-4 (5th Cir.

Sept. 27, 2022). Had the district court considered all the evidence and applied the four factors to all of Price's evidence taken together, it would have found that (1) Harris' use of the word "n-----" and the expression of disdain for the primarily African-American workforce at the plant, along with Motz's racist Facebook posts, related to Price's race, (2) the statements were made proximate in time to Price's termination in that they occurred within a few months; (3) Harris and Motz were individuals with authority over the decision to fire Price, and (4) the statements related to his termination because Harris expressed a desire to "increase diversity" in the primarily African-American workforce, which Brown "understood as Mr. Harris wanting to reduce the number of African Americans working at the plant, given that the workforce at the La Porte plant is predominantly African American." (ROA.273.) Harris fired Price approximately 90 days later in October 2020, which constitutes direct evidence according to the Court's recent decision in *EEOC v. Ryan's Pointe Houston*, No. 19-20656, 2022 WL 4494148 (5th Cir. Sept. 27, 2022). Because all four factors are met in the evidence once completely and properly considered, the district court's granting of summary judgment to Valvoline should be reversed.

**C.    The district court erred by not considering the totality of the circumstances, both facially neutral and overtly discriminatory, as comprising a hostile work environment.**

To prevail on a claim of hostile work environment perpetrated by a supervisor, a plaintiff must prove four elements, the last of which is most relevant here: (1) membership in a protected group; (2) unwelcome harassment; (3) harassment based on the protected characteristic; and (4) harassment affecting a term, condition, or privilege of employment. *Lauderdale* v. *Texas Dep't of Crim. Just., Inst. Div.*, 512 F.3d 157, 162-3 (5th Cir. 2007). "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hernandez* v. *Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey* v. *Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Courts consider the totality of the circumstances in deciding whether harassment alters the victim's conditions of employment and creates an abusive work environment. *See, e.g., Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Hernandez*, 670 F.3d at 651. This inquiry "requires careful consideration of the social context in which particular behavior occurs." *Oncale* v. *Sundowner Offshore Servs.*, 523 U.S. 75, 81

(1998). "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 81-82.

The fourth element of a hostile work environment claim requires the Court to consider whether the harassment complained of "affected a term, condition, or privilege of employment." *Harvill v. Westward Commc'ns*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (alteration omitted). To satisfy this element, the harassment must be "sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003). Making this determination requires consideration of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625

(5th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

Price presented evidence of numerous facially neutral adverse employment actions which occurred contemporaneously with the overtly race-based harassment from Motz and Langston. Price presented evidence that he was subjected to "nitpicking" of his work through comments and "certain things that [Motz] would say to other people." (ROA.196, 202.) He testified about being yelled at for asking a question about a work order. (ROA.203.) Price asked about the attendance point system and how many points he had, and that information was withheld from him by both Harris and Motz, with Harris telling him only that he was okay and didn't need to worry about it. (ROA.202, 253.) When Price called in sick, he was never told that he would be assessed any attendance points or that the points would put him over the permissible amount of points, nor was he informed that he could use some of his 72 hours of unused sick time or his 80 sick partial hours. (ROA.258.)

The district court, however, did not consider this undisputed evidence when applying the totality of the circumstances test to Price's *prima facie* case of a race-based hostile work environment. By omitting

21

these facially neutral actions from consideration, the district court constrained itself only to the statements made by Motz and Langston, which greatly undercuts the purpose of the totality of the circumstances test. The district court erred further by considering the statements from Motz and Langston in isolation from one another, rather than as a continuing practice of discrimination under the totality of the circumstances test. When these statements are considered in conjunction with the aforementioned facially neutral conduct, a reasonable jury could find that Price was subjected to a hostile work environment based on his African American race. Under *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007), this misapplication of the test to Price's *prima facie* hostile work environment case requires reversal of the grant of summary judgment.

      1.    *The district court did not consider Valvoline's use of the attendance policy as facially neutral adverse acts contributing to a hostile work environment.*

"[C]ourts consider the totality of the circumstances" in assessing a hostile work environment claim. *EEOC* v. *WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007). The Fifth Circuit has recognized that a single course of discriminatory harassment may include both explicit discriminatory

behavior, such as the use of epithets, as well as other harassing behavior that is not explicitly race-based, but nevertheless motivated by racial bias. (*See id*. at 400 (explaining that a reasonable juror could conclude that a colleague who called the plaintiff an "Arab" also was motivated by bias when he banged on the plaintiff's office partition); *see also*, *e.g.*, *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 944 (8th Cir. 2010) ("It is well established that all instances of harassment need not be stamped with signs of overt discrimination if they are part of a course of conduct which is tied to evidence of discriminatory animus.") (citations, alterations, and internal quotation marks omitted).

In *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 402-04 (5th Cir. 2021), for example, the Fifth Circuit recently found that racial epithets, when considered in connection with 'facially neutral' conduct, is sufficient to establish a racially hostile work environment:

> To review, and taking the evidence in the light most favorable to Johnson, Palomares used the term "mayate" on at least two occasions in Johnson's presence. Johnson knew this word translated to "n*****." Palomares also regularly used the racist epithets "pinchis mayates" and "pinchis negros." He assigned Johnson less favorable work tasks and referred to Johnson—and Johnson only—as "manos" and "mijo," terms that could reasonably be interpreted as racially pejorative depending on context-specific factors. In addition, Palomares twice hid paperwork that Johnson submitted in his effort to

receive a promotion. Johnson also endured harassment perpetrated by another co-employee who once called him "n*****" to his face. And the harassment Johnson suffered arguably interfered with his ability to work at PRIDE. Under the totality of the circumstances, a reasonable factfinder could conclude that the harassment Johnson allegedly experienced at PRIDE was severe or pervasive enough to constitute a hostile work environment.

Like the plaintiff in *PRIDE*, Price was subjected to numerous 'facially neutral' adverse actions in the workplace in addition to having numerous racial epithets said to him, such as: (1) Harris retroactively applying the attendance policy to Price; (2) Harris refusing to tell Price how many attendance points Price had; and (3) Harris hiding from Price his intention to terminate Price after Price called in sick on October 26, 2020, which was part of Harris's plan of achieving more 'diversity' in the workplace. In sum, numerous courts have acknowledged that the racist epithets used in this case, when taken in conjunction with 'facially neutral' adverse actions, establish a hostile work environment. This Court should likewise find that Price was indeed working in a racially hostile environment.

2.    *The district court improperly considered overtly hostile actions by Price's supervisors as isolated incidents, rather than in the context of a hostile work environment.*

The district court further erred by considering Motz and Langston's use of discriminatory language towards Price not in the total context of the circumstances, but as mere isolated incidents. Under the law of the Fifth Circuit, the district court committed reversible error by doing so.

## D.    The district court erred by finding that two instances of Price's supervisors using historically discriminatory language was not severe enough to create a hostile work environment.

A single instance of harassment, when severe enough, can substantiate and sustain a hostile work environment claim. Price presented evidence that Motz and Langston used language which has historically been used to demean African American men: "lazy boy" and "you people." The district court even agreed that these words, when directed towards African American men, are indicative of race-based discrimination. (ROA.421.) The district court nevertheless found that the use of these terms by Motz and Langston, Price's supervisors, was not severe enough to sustain a hostile work environment claim. This represents another misapplication of the totality of the circumstances test, as well as a slight to the widely accepted knowledge that "lazy" and

"boy," when used to demean African American men, are historically related to race-based discrimination. Under *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007), this misapplication of the test to Price's *prima facie* hostile work environment case requires reversal of the grant of summary judgment. (ROA.419-22.)

## VI.    CONCLUSION

Based on the foregoing, this Court should reverse the trial court's grant of summary judgment in favor of Valvoline, LLC and remand the matter so Price's claims can be tried to a jury.

Respectfully submitted,

*/s/ Melissa B. Carr*
MELISSA B. CARR
State Bar No. 24065008
S.D. Tex. Federal ID No. 3667785
DuBois, Bryant & Campbell, LLP
303 Colorado Street, Suite 2300
Austin, Texas 78701
Phone: (512) 457-8000
Fax: (512) 457-8008
Email: mcarr@dbcllp.com

*Counsel for Plaintiff-Appellant*
*Craig Price, II*

## CERTIFICATE OF SERVICE

I certify that on this 11th day of July, 2023, I filed the *Opening Brief of Plaintiff-Appellant Craig Price, II* electronically with the Clerk of the United States Court of Appeals for the Fifth Circuit. The Court's ECF system will automatically generate and send by email a Notice of Docket Activity to all registered attorneys currently participating in this case, constituting service on those attorneys.

Respectfully submitted,

*/s/ Melissa B. Carr*
MELISSA B. CARR
State Bar No. 24065008
S.D. Tex. Federal ID No. 3667785

*Counsel for Plaintiff-Appellant*
*Craig Price, II*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,133 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14 point.

Dated: July 11, 2023

*/s/ Melissa B. Carr*
MELISSA B. CARR
State Bar No. 24065008
S.D. Tex. Federal ID No. 3667785

*Counsel for Plaintiff-Appellant*
*Craig Price, II*