No. 23-20131

---

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**CRAIG PRICE, II,**

**Plaintiff-Appellant**

**v.**

**VALVOLINE LLC,**

**Defendant-Appellee**

---

**On Appeal from the
United States District Court
for the Southern District of Texas, Houston Division
District Court Case No. 4:21-cv-03683**

---

**BRIEF OF APPELLEE**

---

Jeremy W. Hawpe
jhawpe@littler.com
**LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, Texas  75201.2931
Telephone: 214.880.8100
Facsimile: 214.880.0181**

**Attorneys for Appellee
Valvoline, LLC**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of <u>5th Cir. Rule 28.2.1</u> have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification of recusal.

| | |
|---|---|
| Appellant: | Craig Price, II |
| Counsel for Appellant: | Melissa B. Carr |
| Appellee: | Valvoline LLC |
| Appellee's Attorney: | Jeremy W. Hawpe, Dallas, Texas |

<u>/s/ Jeremy W. Hawpe</u>
Jeremy W. Hawpe

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Fifth Circuit Rule 28.2.3, Defendant/Appellee Valvoline LLC ("Valvoline" or "Appellee") respectfully states that oral argument is not necessary in this case because the dispositive issues have been authoritatively decided, the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. However, Appellee does not waive its right to oral argument if this Honorable Court grants Plaintiff/Appellant Craig Price ("Price" or "Appellant") request for oral argument. If Price's request for oral argument is granted, Appellee respectfully requests an equal opportunity to present its arguments orally as well.

# TABLE OF CONTENTS

PAGE

I.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................1

II.  STATEMENT OF THE CASE ................................................................1

    A.   La Porte Plant Management And Supervisors ....................................1

    B.   Valvoline's Attendance Policy .........................................................1

    C.   Valvoline's COVID-19 Policies .......................................................3

    D.   Price Was Disciplined Numerous Times ...........................................4

        1.   Price Receives A Verbal Warning in December 2019 .................................................................4

        2.   Price Receives A Written Warning in February 2020 .................................................................4

        3.   Price Continues to Violate the Attendance Policy and Receives A Final Written Warning in May 2020 ................................................................5

        4.   In May and June 2020, Price Received Other Disciplinary Actions Concerning His Inadequate Performance ................................................................5

    E.   Price Was Terminated For Additional Attendance Issues ...................6

III. PROCEDURAL HISTORY ....................................................................7

IV.  SUMMARY OF THE ARGUMENTS...........................................................8

V.   STANDARD OF REVIEW BY THE FIFTH CIRCUIT ...........................11

VI.  ARGUMENTS AND AUTHORITIES .......................................................12

    A.   Price Has Presented Insufficient Evidence Of A "Direct Evidence" Claim...............................................................12

# TABLE OF CONTENTS
(CONTINUED)

PAGE

1. The District Court Correctly Concluded That Price Lacked Direct Evidence....................................................13

2. Price Incorrectly Contends The District Court Did Not Consider Other Statements, and Even If It Had, They Are Not Sufficient To Establish A Direct Evidence Claim.....................................................16

3. Even If Price Established Direct Evidence, His Claim Nevertheless Fails ................................................21

4. On Appeal, Price Has Abandoned Any Theory That He Can Establish His Discrimination Claim With Circumstantial Evidence.......................................23

B. Price Has Failed To Establish His Hostile Work Environment Claim ...................................................................................24

VII. CONCLUSION............................................................28

VIII. CERTIFICATE OF SERVICE ....................................30

IX. CERTIFICATE OF COMPLIANCE ............................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
<u>477 U.S. 242</u> (1986)...............................................................................11

*Anderson v. Wachovia Mortg. Corp.*,
<u>621 F.3d 261</u> (3d Ci<u>r. 2010</u>) .............................................................19

*Badgerow v. REJ Properties*,
<u>974 F.3d 610</u> (5th Ci<u>r. 2020</u>) .............................................................25

*Bell v. Dallas Cty.*,
<u>432 F. App'x 330</u> (5th Ci<u>r. 2011</u>) (per curiam) .............................8, 21

*Bhatti v. Trs. of Bos. Univ.*,
<u>659 F.3d 64</u> (1st Ci<u>r. 2011</u>)...................................................................27

*Brooks v. Grundmann*,
<u>748 F.3d 1273</u> (D.C. Ci<u>r. 2014</u>) .........................................................27

*Corley v. Jackson Police Dep't*,
<u>639 F.2d 1296</u> (5th Ci<u>r. 1981</u>) ...........................................................21

*Dailey v. Shintech, Inc.*,
<u>629 F. App'x 638</u> (5th Ci<u>r. 2015</u>) (per curiam) (unpublished)..........26

*Davis v. Moore Wallace, Inc.*,
<u>217 F. App'x 313</u> (5th Ci<u>r. 2007</u>) .......................................................21

*Dediol v. Best Chevrolet, Inc.*,
<u>655 F.3d 435</u> (5th Ci<u>r. 2011</u>) ...............................................................25

*DeWalt v. Meredith Corp.*,
<u>288 F. App'x 484</u> (10th Ci<u>r. 2008</u>) .....................................................26

*Dortch v. Mem'l Herman Healthcare Sys.-Sw.*,
<u>525 F. Supp. 2d 849</u> (S.D. Tex. 2007).................................................22

*EEOC v. WC&M Enters.*,
<u>496 F.3d 393</u> (5th Ci<u>r. 2007</u>) ...............................................................24

*Equal Emp. Opportunity Comm'n v. Ryan's Pointe Houston, LLC*,
    Cause No. 19-20656, 2022 U.S. App. LEXIS 27079 (5th Cir. Sept.
    27, 2022) .................................................................................20

*Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*,
    778 F.3d 473 (5th Cir. 2015) ...................................................13

*Farpella-Crosby v. Horizon Health Care*,
    97 F.3d 803 (5th Cir. 1996) .....................................................26

*Gonzales v. Huerta*,
    826 F.3d 854 (5th Cir. 2016) ...................................................11

*Hamilton v. Dallas County*,
    42 F.4th 550 (5th Cir. 2022) ....................................................21

*Harris v. Drax Biomass Inc.*,
    813 Fed. Appx. 945, 2020 U.S. App. LEXIS 17285 (5th Cir. June
    1, 2020) ...................................................................................15

*Hernandez v. Yellow Transp., Inc.*,
    670 F.3d 644 (5th Cir. 2012) ...................................................24

*Hockman v. Westward Commc'ns, LLC*,
    407 F.3d 317, 122 Fed. Appx. 734 (5th Cir. 2004) .................25

*Hypes ex rel. Hypes v. First Commerce Corp.*,
    134 F.3d 721 (5th Cir. 1998) (per curiam) .............................22

*Jackson v. Cal-Western Packaging Corp.*,
    602 F.3d 374 (5th Cir. 2010) ...................................................18

*Jordon v. Tex. Dep't of Aging & Disabilities Servs.*,
    No. 9:05CV161, 2006 U.S. Dist. LEXIS 43895 (E.D. Tex. June 28,
    2006) .......................................................................................21

*Keen v. Miller Envtl. Grp., Inc.*,
    702 F.3d 239 (5th Cir. 2012) ...................................................16

*Lauderdale v. Tex. Dept. of Crim. Justice*,
    512 F.3d 157 (5th Cir. 2007) ...................................................26

*Lazarou v. Miss. State Univ.*,
549 F. App'x 275 (5th Cir. 2013) (per curiam) ................................................14

*Maldonado v. FirstService Residential, Inc.*,
No. 20-CV-1484, 2021 U.S. Dist. LEXIS 114302, 2021 WL
2517542 (S.D. Tex. June 18, 2021) ....................................................................19

*Mascorro v. Am. Funds Serv. Co.*,
No. SA-05-CA-590-FB, 2006 U.S. Dist. LEXIS 94024 (W.D. Tex.
Nov. 20, 2006) ......................................................................................................21

*McClendon v. United States*,
892 F.3d 775 (5th Cir. 2018) ..............................................................................11

*Mendoza v. Helicopter*,
548 F. App'x 127 (5th Cir. 2013) (per curiam) (unpublished)..........................25

*Padilla v. Carrier Air Conditioning*,
67 F. Supp. 2d 650 (E.D. Tex. 1999)...................................................................27

*Powers v. Woodlands Religious Cmty. Inc.*,
323 F. App'x 300 (5th Cir. 2009) (per curiam) ..................................................22

*Reilly v. TXU Corp.*,
271 Fed. Appx. 375 (5th Cir. 2008).....................................................................17

*Roberts v. Mega Life & Health Ins. Co.*,
No. Civ. A. 304CV756M, 2005 U.S. Dist. LEXIS 4388 (N. D.
Tex., March 22, 2005) .........................................................................................22

*Robinson v. Paulson*,
No. H-06-4083, 2008 U.S. Dist. LEXIS 84808, 2008 WL 4692392
(S.D. Tex. Oct. 22, 2008)......................................................................................27

*Rodriguez v. Eli Lilly & Co.*,
820 F.3d 759 (5th Cir. 2016) ..............................................................................23

*Sandstad v. CB Richard Ellis, Inc.*,
309 F.3d 893 (5th Cir. 2002) ..............................................................................12

*Simmons v. SAIA Motor Freight Line, L.L.C.*,
751 Fed. Appx. 541 (5th Cir. 2018).....................................................................18

*Stone v. Parish of E. Baton Rouge*,
2008 U.S. Dist. LEXIS 78638 (M.D. La. September 30, 2008)........................19

*Tejada v. Travis Assoc. for the Blind*,
2014 U.S. Dist. LEXIS 86590, 2014 WL 2881450
(W.D. Tex. June 25, 2014)................................................................28

*Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*,
310 F.3d 870 (5th Cir. 2002) ...........................................................12

*Thomas v. Willis G's Post Oak, Inc.*,
No. H-04-4479, 2006 U.S. Dist. LEXIS 29906 (S.D. Tex. April 25,
2006) ......................................................................................22

*Troupe v. Cintas*,
No. Civ.A.3:99CV0193M, 2000 U.S. Dist. LEXIS 10710, 2000
WL 1056327 (N. D. Tex. July 31, 2000)..............................................22

*Vaughner v. Pulito*,
804 F.2d 873 (5th Cir. 1986) ...........................................................16

*Wallace v. Methodist Hosp. Sys.*,
271 F.3d 212 (5th Cir. 2001) ...........................................................15

*West v. City of Houston*,
960 F.3d 736 (5th Cir. 2020) ...........................................................25

**Other Authorities**

Fed. R. App. P. 32(A)(5)..................................................................30

Fed. R. App. P. 32(A)(6)..................................................................30

Fed. R. App. P. 32(A)(7)(B) .............................................................30

Fed. R. App. P. 32(f)......................................................................30

Rule 25(b) and (c) of the Federal Rules of Appellate...............................29

Rule 56 of the Federal Rules of Civil Procedure .....................................16

## I.
## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court properly concluded that Appellant failed to produce sufficient direct evidence of discrimination, and whether such alleged comments are merely stray remarks.

2.      Even if Appellant's evidence sufficiently qualifies as direct evidence, did the District Court nevertheless properly grant summary judgment on Appellant's discrimination claim?

3.      Whether the District Court correctly concluded that Appellant failed to put forth sufficient evidence of an actionable hostile work environment claim.

## II.
## STATEMENT OF THE CASE

### A.     La Porte Plant Management And Supervisors

Appellant Craig Price ("Appellant" or "Price") was hired as a loader/unloader at Valvoline's La Porte, Texas, Plant.  ROA.186.  During Price's employment, Frank Harris became the Plant Manager in February 2020.  ROA.136.  During most of the relevant time, Price reported to Jeffrey Brown (African American) or Dalan Motz (two or more races).  ROA.136.  Mr. Brown and Mr. Motz reported to Plant Manager Harris.  ROA.136.

### B.     Valvoline's Attendance Policy

During Price's employment, Valvoline maintained an attendance policy.  ROA.136, 143.  Employees' attendance records are assessed on a rolling 12-month basis.  Various attendance points were issued for attendance-related issues.  For example, if the employee missed their shift, one (1) point would be assessed.

ROA.137.  If the employee was late or left their shift before completing at least half of the shift, one-half (1/2) of a point was assessed.  ROA.137. Employees were advised on the Company's progressive discipline regarding attendance and were informed that upon obtaining five (5) instances/points within a twelve-month period, they would be issued a verbal warning.  At six (6) instances/points, an employee would be issued a Written Warning.  At seven (7) instances/points, they were suspended for three days and issued a Final Written Warning.  And finally, at eight (8) instances/points, they employee was advised that their employment would be terminated.  ROA.137.

In late 2019, the Company realized that it was not issuing attendance discipline based on certain point thresholds described above.  Several employees had incurred numerous attendance points, but had not been advised of their status and the various steps of the progressive discipline policy had not been implemented. ROA.137.  Accordingly, in late 2019/early 2020, there was a restart that was applied universally to all employees.  While attendance points did not immediately go away, regardless of the number of points previously incurred by an employee, employees would start with a verbal warning.  ROA.137.  For each subsequent attendance point, the Company would proceed to the next level of discipline, as outlined above.  In other words, while the attendance policy dictated that employees who had eight (8) attendance points were subject to termination of employment, if the various steps of

the progressive discipline had not been documented, the first discipline would be a verbal warning, regardless of the number of points incurred up to that point. ROA.137.

Price does not dispute that Valvoline had a well-publicized attendance policy; in fact he called the policy "pretty straightforward." ROA.116. Price concedes he knew the Company's policy. ROA.115. Price also admits he was advised that an employee would be subjected to various levels of discipline based on the number of incurred attendance points within the last twelve (12) months. ROA.115. Price admits he knew after receiving a certain threshold of points, he could be terminated. ROA.126.

### C.   Valvoline's COVID-19 Policies

Like many companies, after the onset of the COVID-19, Valvoline's attendance policies evolved during much of 2020. However, the Company clearly communicated that employees who believed they were experiencing symptoms of COVID-19 should not come to work. ROA.137-138. Employees were not issued attendance points if they reported that they were experiencing COVID-19 symptoms. ROA.138. However, employees that reported other sicknesses unrelated to COVID-19, would continue to be issued attendance points in line with the attendance policy. ROA.138.

In April 2020, Price first reported that his significant other had contracted

COVID-19, and then that he had a possible exposure to COVID-19. <u>ROA.120</u>. He was given paid time off while he quarantined. <u>ROA.120</u>. Price earned no attendance points for his COVID-19-related absences. <u>ROA.138</u>.

### D. **Price Was Disciplined Numerous Times**

Throughout his employment, Price was disciplined numerous times for his continued attendance issues and multiple infractions of the attendance policy.

#### 1. *Price Receives A Verbal Warning in December 2019*

On December 30, 2019, Valvoline issued Price a Verbal Warning regarding his attendance. <u>ROA.145</u>. The Verbal Warning detailed ten (10) attendance points that had been issued from October 18, 2019 to December 27, 2019. Under the plain terms of the attendance policy, Price's employment *should* have been terminated after accumulating eight (8) attendance points. However, because Price had not been disciplined for the attendance points prior to that time, he was issued a Verbal Warning, the first level in the progressive discipline policy, as discussed above. Price signed and acknowledged the Verbal Warning which stated that, "I understand that failure to meet the expectations outlined above and sustain an acceptable level of performance moving forward may result in further disciplinary action, up to and including termination." <u>ROA.145</u>.

#### 2. *Price Receives A Written Warning in February 2020*

On February 10, 2020, Price was issued the next level of discipline–a Written Warning–for additional attendance issues. <u>ROA.147</u>. Specifically on January 21

and February 4, 2020, Price incurred two additional ½ (half) points for being late. Price acknowledged and signed the Written Warning, which stated, "[i]f there is an accumulation of 1 full incident the next level of escalation will be a 3-day un-paid suspension." ROA.147.

### 3. Price Continues to Violate the Attendance Policy and Receives A Final Written Warning in May 2020

On May 4, 2020, Price was issued a Final Written Warning regarding his attendance. ROA.149. Specifically, on April 28, 2020, Price earned another attendance point for calling in sick without providing the adequate notice period. At the time the Final Written Warning was issued, Price had 14.5 attendance incidents/points. ROA.149. Price testified that he had no reason to believe that the number was inaccurate. ROA.121. Price signed the Final Written Warning which stated, "Craig is receiving a final written warning and 3-day suspension for his continues [sic] attendance issues. Additional incidents can lead to further disciplinary action up to and including termination." ROA.149.

### 4. In May and June 2020, Price Received Other Disciplinary Actions Concerning His Inadequate Performance

On May 27, 2020, Price received a Written Warning about his performance. ROA.151. Specifically, he did not have his radio with him when he was called, and his failure to carry the radio violated prior instructions he had been given, as well as the Company's safety guidelines.

Thereafter, on June 2, 2020, Price was issued a Final Written Warning for additional performance issues. ROA.153. Specifically, he was disciplined for wearing earbuds in the warehouse, which violated Company policy, and Price was also seen violating his work restrictions after a recent workers' compensation injury. And finally, Price was also disciplined for the insubordinate and disrespectful behavior he exhibited towards his supervisor, Jeffrey Brown. As part of the Final Written Warning, he received a 3-day suspension. Price was told that "[a]dditional incidents can lead to further discipline action up to and including termination of your employment." ROA.153. Despite the fact that the Final Written Warning was issued by Mr. Brown, who is African American, Price testified that he believed the warning was given to him because of his race. ROA.123.

### E.     Price Was Terminated For Additional Attendance Issues

On October 26, 2020, Plaintiff called Plant Manager Harris and reported that he had attended a wedding over the weekend, and believed that he had food poisoning. ROA.139. Price does not deny making such a comment to Mr. Harris. ROA.124. However, Price never indicated that he was experiencing COVID-19 symptoms or had otherwise been exposed to COVID-19. ROA.139. While Price claims he went to a physician for whatever ailment/illness he was experiencing, Price concedes that he never provided a doctor's note to the Company. ROA.124. Moreover, when asked if Price in fact had COVID-19, unsurprisingly Price testified

6

as follows:

> Q:    Did you test for COVID after the wedding?
> A:    I don't recall it at the moment, sir.
> Q:    Have you ever tested positive for COVID?
> A:    I don't remember at this moment, sir.
> Q:    You don't know if you've ever tested positive for COVID?
> A:    I don't remember at this moment, sir.

ROA.124.

Price produced no evidence that he was even tested for COVID-19 after the wedding.

Consistent with the Company's attendance policy, because Price did not report he was experiencing COVID-19-related symptoms, Price was issued another attendance point for his reported food poisoning-related absence and lack of notice. ROA.139-140. Pursuant to the progressive discipline policy, Price was eligible for termination of his employment, and the Company terminated his employment. ROA.156-158.

Plant Manager Harris recommended that Price's employment be terminated, which was supported by his supervisor (Mr. Shelton) and human resources (Kevin Meyers). ROA.140. None of the other managers at the La Porte facility (Mr. Brown or Mr. Motz) were consulted on the decision to terminate. ROA.140.

### III.
### PROCEDURAL HISTORY

Price filed his lawsuit in the United States District Court for the Southern

7

District of Texas, on November 9, 2021.  ROA.6-11.  Price filed an Amended

Complaint on January 28, 2022.  ROA.40-47.

In the lawsuit, Price asserted claims for race discrimination, retaliation, and a

hostile work environment.

Valvoline filed a motion for summary judgment on November 14, 2022.

ROA.54-158.

The District Court issued an Order granting summary judgment on March 3,

2023.  ROA.411-424.  The District Court determined that Appellant's discrimination

claim failed for multiple reasons.  First, Appellant failed to establish that purported

comments constituted direct evidence of discrimination.  ROA.414-416.  The

District Court then concluded that Appellant also failed to present sufficient

circumstantial evidence supporting his race discrimination claim.  ROA.417-419.

Finally, the District Court concluded that Appellant's hostile work environment

claim should be dismissed because he did not establish a prima facie case because

the alleged comments were neither severe nor pervasive. ROA.419-422.[1]

Appellant filed his notice of appeal on March 31, 2023.  ROA.448-449.

## IV.
## SUMMARY OF THE ARGUMENTS

As should go without saying, an employee's failure to show up for work is a

---

[1] The District Court also concluded that Price's retaliation claim failed.  However, Price has not appealed the determination of that claim.

legitimate reason for firing him. *See Bell v. Dallas Cty.*, <u>432 F. App'x 330, 334</u> (5th Ci<u>r. 2011</u>) (per curiam). Despite repeated attempts to correct Price's attendance, he failed to improve. Price was advised multiple times–through documented corrective action–that if his attendance did not improve, he would be subject to further discipline, including termination of employment. After being placed on a Final Written Warning, Price called in on October 26, 2020, and indicated that he would not appear for his shift. Accordingly, and in line with Valvoline's attendance policy, Price's employment was terminated.

During all relevant times to this suit, the Company maintained an attendance policy. The attendance policy required that for certain absences, employees would earn various attendance points. If an employee received a certain amount of attendance points, they would be subject to the Company's progressive discipline policy.

Price had significant attendance issues through most of his employment. On December 30, 2019, Price was issued a Verbal Warning for his attendance issues. The Verbal Warning detailed the ten (10) attendance points that Price had received to-date. Price continued to have attendance issues, and on February 10, 2020, Price was issued a Written Warning because he had two (2) instances of being late to work following his Verbal Warning. On May 4, 2020, Price was issued a Final Written Warning for additional attendance issues. Price signed the Final Written Warning

9

which stated, "Craig is receiving a final written warning and 3-day suspension for his continues [sic] attendance issues. Additional incidents can lead to further disciplinary action up to and including termination."

On October 26, 2020, Price reported that he had attended a family wedding and contracted food poisoning. As such, he informed his manager that he was going to miss work. Because he failed to give sufficient notice of his absence, he was issued another attendance point. Price was already on a Final Written Warning, and thus, the latest point made him eligible for termination pursuant to the clear terms of the attendance policy.

Price claims that he was subjected to discrimination based on his race, as well as a hostile work environment. The District Court correctly concluded that those claims should be dismissed on summary judgment.

As to Price's discrimination claim, he asserts that a few purported comments support a direct evidence claim. However, those statements (even if true) are merely stray remarks because Price could not establish that those statements related to his race or were otherwise related to his termination of employment. On appeal, Price argues that other comments allegedly made by various Valvoline employees support his direct evidence claim, but importantly, he did not assert those statements at the District Court level or in response to Valvoline's motion for summary judgment. Nevertheless, these comments also fail to establish direct evidence of discrimination.

Finally, even if the comments analyzed by the District Court—or the comments raised for the first time on appeal—are deemed to be sufficient direct evidence, the overwhelming evidence is that the same decision would have been made regardless.

Price's hostile work environment claim also fails, and the District Court correctly dismissed the claim on summary judgment. Price cannot and did not establish that the alleged comments were severe or pervasive, and did not establish that the environment was objectively offensive.

For the reasons set forth herein, the District Court's order granting summary judgment should be affirmed.

## V.
## <u>STANDARD OF REVIEW BY THE FIFTH CIRCUIT</u>

This Court reviews grants of summary judgment *de novo*. *Gonzales v. Huerta*, <u>826 F.3d 854, 856</u> (5th Cir. 2016) (citations omitted). "When the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *McClendon v. United States*, <u>892 F.3d 775, 781</u> (5th Cir. 2018) (quotation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, <u>477 U.S. 242, 248</u> (1986). Furthermore, the Court "may affirm the district court's

decision on any ground supported by the record, even if it was not the basis for the judgment." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, <u>310 F.3d 870, 878</u> (5th Cir<u>. 2002</u>).

## VI.
## ARGUMENTS AND AUTHORITIES

### A.    Price Has Presented Insufficient Evidence Of A "Direct Evidence" Discrimination Claim

The District Court properly analyzed Price's scant evidence and correctly concluded that he had failed to establish a direct evidence discrimination case.   This Court has defined direct evidence as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, <u>309 F.3d 893, 897</u> (5th Cir<u>. 2002</u>).   Price's evidence does not support a direct evidence claim, as the purported comments were stray remarks (at best). Accordingly, the District Court's decision should be affirmed.   On appeal, Price asserts additional statements that he contends support a direct evidence claim.  These statements were not raised by Price in response to Valvoline's motion for summary judgment, and should not be considered by this Court.  However, even if they were considered, these statements fail to constitute direct evidence for the same reasons.

Assuming *arguendo* that Price had established direct evidence of discrimination, Valvoline was still entitled to summary judgment as it established that Price's termination was pursuant to its well-established attendance policy and

Price presented the District Court no evidence to the contrary. Thus, even if Price had established that he had direct evidence of discrimination, the District Court properly granted summary judgment as to Price's discrimination claim.

1. ***The District Court Correctly Concluded That Price Lacked Direct Evidence***

Price has insufficient evidence to establish direct evidence of discrimination. In response to Valvoline's motion for summary judgment, Price alleged that two (2) comments supported such a finding—specifically, that Plant Manager Harris told another manager that the La Porte plant "needed more diversity in the workplace," (ROA.178, 273) and that Plant Manager Harris also indicated that he intended "to enforce the attendance policy for the exact purpose of terminating Mr. Price." ROA.178, 273. The District Court concluded that those comments could not support a direct evidence claim, as Price could not establish that these alleged comments were related to his race. ROA.417.

To determine whether comments constitute "direct evidence" versus only "stray remarks," a plaintiff must show that the comment was (1) related to the plaintiff's status as a member of a protected class, (2) proximate in time to the adverse employment action, (3) made by someone "with authority over the challenged employment decision," and (4) related to the challenged decision. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.,* 778 F.3d 473, 476 (5th Cir. 2015). The test focuses on "whether the comments prove, **without inference or**

**presumption**, that race was a basis in employment decisions in the plaintiff's workplace." *Id*. (cleaned up) (emphasis added). When evidence is ambiguous such that an inference is required to show discriminatory intent, the evidence is at best circumstantial, not direct. *See Lazarou v. Miss. State Univ.*, 549 F. App'x 275, 280 (5th Cir. 2013) (per curiam).

First, the alleged statements by Plant Manger Harris do not establish direct evidence because they would require inferences. Price's evidence even concedes that he must assume what was meant by the statements. Specifically, Price submitted a declaration from former supervisor Brown, who contended that Plant Manager Harris indicated to him that the plant "needed more diversity." ROA.273. In Brown's declaration, he states that he "understood" the comment regarding the diversity in the workplace to mean that the manager "want[ed] to reduce the number of African Americans working at the [P]lant." ROA.273. As the District Court correctly concluded, "[b]ut Brown does not know for sure if Harris was referring to reducing the number of Black employees." ROA.416-17. Indeed, Plant Manager Harris noted during his deposition that Price's shift "was a mix of African Americans, Caucasians, Hispanics, predominantly males, but a few females on the shifts" and that there were few "Asians and Middle Eastern people" working on the shift. ROA.417. As the District Court concluded, while this statement "could have referred to hiring more white people, it also could have meant that he was interested

in hiring more women or people of other nationalities." ROA.417. "That such inferences are necessary means that, even if the summary-judgment record substantiates [Price's] allegations, he has not established a prima facie case of discrimination through direct evidence. ROA.417; *See also Harris v. Drax Biomass Inc*., 813 Fed. Appx. 945, 947, 2020 U.S. App. LEXIS 17285, *3-4, (5th Cir. June 1, 2020).

Price's former supervisor Brown also alleges that Plant Manager Harris stated that he intended to use the attendance policy to terminate Price's employment. ROA.273. However, Price has offered no evidence that the comment—even if made—had anything to do with Price's race. Indeed, the uncontroverted evidence was that the Company maintained an attendance policy, that Price was counseled and disciplined numerous times regarding his attendance issues, and that Price's employment was terminated due to his multiple attendance infractions. The District Court correctly concluded this statement required an inference that the basis of the termination was Price's race and therefore could not be the basis of a direct evidence claim. ROA.417.

Thus, these comments are, at best, stray remarks that fail to provide direct evidence of discrimination for Price's race discrimination claim. *See Wallace v. Methodist Hosp. Sys*., 271 F.3d 212, 222 (5th Cir. 2001) ("Where comments are vague and remote in time they are insufficient to establish discrimination."

(quotation marks and alterations omitted)).

> **2.** ***Price Incorrectly Contends The District Court Did Not Consider Other Statements, and Even If It Had, They Are Not Sufficient To Establish A Direct Evidence Claim***

Price alleges that the District Court failed to consider additional statements that he contends supports his direct evidence claim. However, Price did not argue that those purported statements supported his direct evidence claims in response to Valvoline's motion for summary judgment. Indeed, the only comments Price argued that supported his direct evidence claim was the statement concerning diversity in the La Porte plant, and that Plant Manager Harris indicated that he would use the attendance policy to terminate Price's employment. ROA.178-179. Accordingly, this Court should not consider additional statements that were not raised with the District Court. *See Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."). Moreover, Rule 56 of the Federal Rules of Civil Procedure does not impose upon the District Court—or this Court—a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012) (citation and internal quotation marks omitted).

On appeal, Price's purported evidence in support of his direct evidence allegations can be summarized as follows:

- Price's supervisor addressed—with another member of management—the fact that Black employees were using the word "n----" in the workplace (i.e. not even that the word was used in front of Price, let alone that the word was directed to/about Price);

- Another manager remarked to Price that, "You people always want something for free;"

- Another employee called Price a "lazy boy;" and

- The private Facebook posts Price's counsel produced during the course of discovery from a joint account shared by a Valvoline manager and his wife.

Even if this Court considered these statements not asserted in response to the motion for summary judgment, they would not constitute direct evidence of discrimination. First, Price submitted a declaration in support of his summary judgment response from former supervisor Brown. Brown's declaration stated that in May 2020—some five months prior to Price's termination of employment—Harris reported to Brown that other employees were using inappropriate language in the workplace, including the use of the slur "n----." To the extent Price has tried to distort this alleged comment, it should be noted that even in Brown's declaration he makes clear that Harris purportedly used the comment when telling Brown about what other Plant employees were saying. Even Brown does not allege (a) that Harris called Price that word, or (b) that Harris was calling any individual that word. *See* ROA.273. Even if taken as true that these statements were made, they are insufficient to establish a direct evidence claim. *Reilly v. TXU Corp.*, 271 Fed. Appx. 375, 379 (5th Cir. 2008) (holding that the employee failed to establish a direct

17

evidence claim because "the person making the statement must either be expressing his own racial animus, and not someone else's, or have an objective basis for believing it.")  Additionally, even assuming Price's facts as true, there is no evidence that the comment had anything to do with Price or the decision to terminate his employment.  As such, it cannot support a direct evidence claim.

As to the other comments Price complains were not raised in the District Court (and thus were not considered), they too fail to establish any direct evidence claim. None of the other purported comments were made by the manager responsible for terminating Price's employment.   A workplace comment is evidence of discrimination if, *inter alia*, it is made by "an individual with authority over the employment decision at issue." *Jackson v. Cal-Western Packaging Corp.,* 602 F.3d 374, 380 (5th Cir. 2010).  As to Mr. Motz's alleged comment that "you people always want something for free," those claims too are stray remarks.  The unrefuted testimony is that Motz was not involved in the decision to terminate Price's employment.   ROA.140.   Thus, this alleged comment cannot support a direct evidence claim. *See Simmons v. SAIA Motor Freight Line, L.L.C.*, 751 Fed. Appx. 541, 545 (5th Cir. 2018) (holding that statements made by other managers not involved in the termination do not support a direct evidence claim).

Moreover, Price's allegation that a supervisor stated "you people always want something for free" is also insufficient to establish a direct evidence claim.  Courts

have held that statements such as "you people" are insufficient to establish a direct evidence claim. *See e.g., Stone v. Parish of E. Baton Rouge,* 2008 U.S. Dist. LEXIS 78638 (M.D. La. September 30, 2008) ("There is nothing directly or indirectly race-based about the words, 'Bubba' or 'you people' or 'your people.'"); *Maldonado v. FirstService Residential, Inc.*, No. 20-CV-1484, 2021 U.S. Dist. LEXIS 114302, 2021 WL 2517542, at *7 (S.D. Tex. June 18, 2021) (finding the phrases "those people" and "these people" were insufficient to state a § 1981 claim); *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (agreeing with several courts that the phrase "you people" is "too ambiguous to constitute direct evidence of discrimination when used in isolation"). Just as the District Court concluded regarding the other alleged comments, this alleged comment is not direct evidence of discrimination because an inference or presumption would be required.

Finally, Price alleges that the District Court failed to consider certain Facebook posts. Price alleges that the Facebook posts come from the joint account that former manager Motz shared with his wife. First, Motz disavowed making the posts at issue. Moreover, the unrefuted evidence was that the decision to terminate Price's employment was made by Harris, Shelton and Meyers. ROA.140. Motz was not involved whatsoever in Price's termination of employment. ROA.140. Even if the District Court should have considered the Facebook posts, because they were not made by a person who influenced the termination decision and were not related to

Price's termination of employment, they qualify as stray remarks, at best.

Price also argues that *Equal Emp. Opportunity Comm'n v. Ryan's Pointe Houston, LLC*, Cause No. 19-20656, 2022 U.S. App. LEXIS 27079 (5th Cir. Sept. 27, 2022) is instructive. The District Court specifically analyzed *Ryan's Pointe,* and correctly concluded that the facts of that case were distinguishable than those presented by Price. In *Ryan's Pointe*, the Fifth Circuit concluded that management responsible for the termination decision made statements that clearly demonstrated a discriminatory motive on its face without the need for inference. For example, management expressed dismay that the office staff were "all Mexicans." A manager "made his preference for a 'white' staff known on multiple occasions … and told other supervisors to hire a '"higher class of individual with the look of Ken and Barbie' to replace [plaintiff]". *Id*. at *10. The Fifth Circuit concluded that the statements (1) related directly to the plaintiff's national origin; (2) were proximate in time to the adverse employment action; (3) were made by a person with authority over plaintiff's termination; and (4) related to the termination of the plaintiff because the statements clearly showed a preference for a "white" staff.

The District Court thoroughly analyzed *Ryan's Pointe* and correctly held that "[u]nlike in *Ryan's Pointe Houston, LLC,* where no inference or presumption was required for the Fifth Circuit to determine the discriminatory motive for the assistant manager's termination, Plaintiff's evidence requires that the Court infer that Harris

terminated Plaintiff based on race." ROA.416.

> **3.   *Even If Price Established Direct Evidence, His Claim Nevertheless Fails***

Even assuming that Price could establish that he had direct evidence of discrimination, "the burden of proof shifts to [Valvoline] to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Hamilton v. Dallas County*, 42 F.4th 550, 554 (5th Cir. 2022).

As should go without saying, an employee's failure to show up for work is a legitimate reason for firing him. *See Bell v. Dallas Cty.*, 432 F. App'x 330, 334 (5th Cir. 2011) (per curiam).  Valvoline had a reasonable, good faith belief that Price failed to abide by COVID-19-related absence policy. *See Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1298 (5th Cir. 1981) ("[A] mistaken but good-faith belief that an employee has violated the employer's rule is sufficient to rebut the *McDonnell Douglas* inference that the employee was discharged for impermissible reasons."); *see Mayberry*, 55 F.3d at 1090-91 (violations of an employer's "Code of Conduct" legitimate grounds for termination); *see also Davis v. Moore Wallace, Inc.*, 217 F. App'x 313 (5th Cir. 2007), aff'g No. 9:05-CV-57, 2006 U.S. Dist. LEXIS 15652 (E.D. Tex. March 15, 2006) (failure to abide by employer's attendance policy legitimate grounds for plaintiff's termination); *Mascorro v. Am. Funds Serv. Co.,* No. SA-05-CA-590-FB, 2006 U.S. Dist. LEXIS 94024 (W.D. Tex. Nov. 20, 2006)

21

(same); *Jordon v. Tex. Dep't of Aging & Disabilities Servs.*, No. 9:05CV161, 2006 U.S. Dist. LEXIS 43895 (E.D. Tex. June 28, 2006) (same); *Thomas v. Willis G's Post Oak, Inc.*, No. H-04-4479, 2006 U.S. Dist. LEXIS 29906 (S.D. Tex. April 25, 2006) (same).

Numerous courts have found that violation of an attendance policy to be a legitimate, nonretaliatory reason for discharging an employee. *See, e.g., Dortch v. Mem'l Herman Healthcare Sys.-Sw.*, 525 F. Supp. 2d 849, 865 (S.D. Tex. 2007) (citing *Davis v. Moore Wallace, Inc.*, 217 F. App'x 313, 316 (5th Cir. 2007)). As a general proposition, an employer's termination of an employee for violation of a neutral attendance policy is legitimate. *Roberts v. Mega Life & Health Ins. Co.*, No. Civ. A. 304CV756M, 2005 U.S. Dist. LEXIS 4388 (N. D. Tex., March 22, 2005); *See also Troupe v. Cintas*, No. Civ.A.3:99CV0193M, 2000 U.S. Dist. LEXIS 10710, 2000 WL 1056327, at *3 (N. D. Tex. July 31, 2000); *Powers v. Woodlands Religious Cmty. Inc.*, 323 F. App'x 300, 302 (5th Cir. 2009) (per curiam) ("[The employer's] stated reason for [the employee's] termination—absenteeism—is a legitimate nondiscriminatory reason for its decision."); *Hypes ex rel. Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998) (per curiam) (recognizing a record of excessive absences is a legitimate, nondiscriminatory reason to fire an employee).

The unrefuted evidence is that Price's employment was terminated pursuant to the attendance policy. Price does not dispute that he incurred sufficient attendance

points that subjected him to termination of employment under Valvoline's attendance policy. At summary judgment, Price alleged—without evidence—that he was treated differently than other employees.    However, the    District Court concluded that he could not "prove that these employees had a similar history of attendance violations as him but were not terminated." ROA.418.  Thus, even if the comments Price points to "were direct evidence of discrimination, this evidence is 'insignificant in comparison to the evidence of' [Valvoline's] legitimate reasons for his termination, and 'thus is insufficient, on its own, to establish discrimination.'" *Rodriguez v. Eli Lilly & Co.,* 820 F.3d 759, 765 (5th Cir. 2016) (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)).

Accordingly, even if this Court were to determine that Price presented sufficient evidence of a direct evidence claim, his discrimination claim nevertheless fails as the overwhelming unrefuted evidence was that Price violated Valvoline's well-established attendance policy.    The District Court's dismissal of Price's race discrimination claim should be affirmed.

4.    ***On Appeal, Price Has Abandoned Any Theory That He Can Establish His Discrimination Claim With Circumstantial Evidence***

After holding that Price had insufficient evidence to establish a direct evidence claim, the District Court concluded that Price failed to establish his discrimination claim via circumstantial evidence.  Price does not challenge such on

appeal, thus, it should not be considered by this Court.

**B.**    **Price Has Failed To Establish His Hostile Work Environment Claim**

Price also appeals the District Court's conclusion that he failed to establish a hostile work environment claim.  Price's hostile work environment claim is premised on two alleged statements – first, that a former supervisor called Price a "lazy boy," and that Motz said, "you people always want something for free."  Price also alleges that he was subjected to "facially neutral" adverse actions. The District Court correctly concluded that the comments were not "objectively severe or pervasive enough to create a hostile work environment" and that they were "not severe, physically threatening, nor humiliating enough to create an objectively hostile environment …" ROA.419-422.

To establish a claim of hostile work environment under Title VII, a plaintiff must prove he: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment  in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citation omitted).   "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." *EEOC v. WC&M Enters.*,

496 F.3d 393, 399 (5th Cir. 2007).

To determine whether the work environment is objectively offensive, the court considers the totality of the circumstances, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Badgerow v. REJ Properties*, 974 F.3d 610, 618 (5th Cir. 2020) (internal quotation marks omitted). "No single factor is determinative." *Id*. (internal quotation marks omitted).

Price's hostile work environment claim fails as he cannot establish that the environment was objectively offensive. First, Price failed to show that the alleged harassment was frequent. *Compare West v. City of Houston,* 960 F.3d 736, 742 (5th Cir. 2020) (concluding plaintiff failed to show her harassment was frequent or pervasive when some conduct occurred "once," "twice," or "occasionally" and plaintiff failed to provide evidence of frequency of "other complained-of conduct"), *Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (per curiam) (unpublished) ("[T]he complained of conduct occurred sporadically over a several year period and cannot accurately be described as pervasive."), and *Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 328-29, 122 Fed. Appx. 734 (5th Cir. 2004) (concluding conduct was not pervasive when the plaintiff "did not even estimate how many times [the] conduct occurred"), with *Dediol v. Best Chevrolet,*

*Inc.*, 655 F.3d 435, 439, 443 (5th Cir. 2011) (holding a genuine dispute existed when the plaintiff "endured a pattern of name-calling of a half-dozen times daily" that "may have interfered with his pecuniary interests" and when, "[o]n many occasions, there were incidents of physical intimidation and/or violence" involving the plaintiff's supervisor), *Lauderdale v. Tex. Dept. of Crim. Justice,* 512 F.3d 157, 164 (5th Cir. 2007) (finding harassment pervasive when plaintiff received unwanted phone calls "ten to fifteen times a night for almost four months"), and *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (concluding harassing conduct was pervasive when it was described as occurring "two or three times a week").

Moreover, the alleged comments were not severe or pervasive.  *Harvill*, 433 F.3d at 435-36; *Dailey v. Shintech, Inc.,* 629 F. App'x 638, 640, 644 (5th Cir. 2015) (per curiam) (unpublished) (affirming grant of summary judgment for employer on hostile work environment claim even though plaintiff's supervisor called him "a 'black little motherf—r' on at least two occasions," the supervisor said "he would 'kick his black a—s,'" and a coworker called plaintiff "a 'ni—er'").

Price also alleges that he was subjected to "nitpicking" and that such constitutes evidence of a hostile work environment.  Appellant Brief at p. 21.  However, "nitpicking" one's work performance, however, is not sufficiently severe or humiliating to be actionable.  *See DeWalt v. Meredith Corp.*, 288 F. App'x 484,

495-96 (10th Cir. 2008) (recognizing that nitpicking plaintiff's work performance was not actionable); *Robinson v. Paulson*, No. H-06-4083, 2008 U.S. Dist. LEXIS 84808, 2008 WL 4692392, at *18 (S.D. Tex. Oct. 22, 2008) ("Generally, heightened scrutiny of an employee by a supervisor is not harassment that can support a hostile work environment claim."); *Padilla v. Carrier Air Conditioning*, 67 F. Supp. 2d 650, 661 (E.D. Tex. 1999) (holding that supervisor's close scrutiny of plaintiff's work did not constitute harassment).

Finally, Price argues that he was subject to "numerous facially neutral adverse employment actions which occurred contemporaneously with the overtly race-based harassment …" Appellant Brief, p. 21.   In other words, Price attempts to argue that these "facially neutral" actions somehow are intentional acts supporting his racially hostile work environment claim.   Price cites the Court no opinions which support this theory.   Indeed, neutral adverse employment actions cannot form the basis of an actionable hostile work environment claim.   *See, e.g., Brooks v. Grundmann,* 748 F.3d 1273, 1276 (D.C. Cir. 2014) ("selective enforcement of a time and attendance policy does not necessarily indicate conduct giving rise to a hostile work environment claim."); *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 74 (1st Cir. 2011) (concluding that selective enforcement of workplace rules and the failure to extend certain informal courtesies are part of conduct that is "far from severe [and] never physically threatening."). Disciplining an employee for performance issues, when

consistent with the employer's policies, is not a hostile act. *Tejada v. Travis Assoc. for the Blind*, 2014 U.S. Dist. LEXIS 86590, 2014 WL 2881450, at *5 ( W.D. Tex. June 25, 2014) (citing *Schroeder v. Greater New Orleans Fed. Credit Union,* 664 F.3d 1016, 1024 (5th Cir. 2011)).

Accordingly, the District Court correctly concluded that Appellant's hostile work environment claim could not withstand summary judgment, and properly concluded that it should be dismissed.  This Court should affirm the District Court's determination.

## VII.
## CONCLUSION

For the reasons set forth above, the Court should affirm the District Court's judgment.

Dated:    August 11, 2023                    Respectfully submitted,

/s/ Jeremy W. Hawpe
Jeremy W. Hawpe
Bar No. 24046041
jhawpe@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, TX  75201.2931
Telephone:      214.880.8100
Facsimile:       214.880.0181

**ATTORNEYS FOR APPELLEE
VALVOLINE LLC**

## VIII.
## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedures, on August 11, 2023 and all registered counsels of record, and has been transmitted to the Clerk of the Court.

<u>/s/ Jeremy W. Hawpe</u>
Jeremy W. Hawpe

**IX.**

<u>**CERTIFICATE OF COMPLIANCE**</u>

This brief complies with the type-volume limitation of <u>Fed. R. App. P. 32(A)(7)(B)</u> because this brief contains 6,338 words, excluding the parts of the brief exempted by <u>Fed. R. App. P. 32(f)</u>.   This brief also complies with the typeface requirements of <u>Fed. R. App. P. 32(A)(5)</u> and the type requirements of <u>Fed. R. App. P. 32(A)(6)</u> because this brief has been prepared in a proportionally spaced typeface using Word with a 14 point font named Times New Roman.


<u>/s/ Jeremy W. Hawpe</u>
Jeremy W. Hawpe